CLARLITKO VS ELLIOTT.

*As to a contract for a sale of the lands of an Indian reservee, located under the treaty of the 24th March, 1832, between the United States and the Creek Indians.*

1. A contract for the sale of his land, by an Indian reservee, located under the treaty of the 24th of March, 1832, and by which the reservee agreed to make title to a contemplated vendee, at some future day,—requires the certificate of an agent, appointed for that purpose, and the approval of the President of the United States, to render it valid.

2. Such a contract, without the certificate of an agent, or the approval of the President, is not valid as a conveyance operating *in præsenti,* or as a stipulation for one to be executed *in futuro;* and therefore, an undertaking by the reservee, to protect his tenant in the possession, until the conveyance could be perfected, being dependent upon the principal contract, for the sale and conveyance, is in the same predicament.

In error to the Circuit Court of Talladega county.

In this case, the plaintiff in error as landlord, complained before a magistrate in Talladega county, that the said plaintiff, on the —— day of ——, in the year of our Lord, one thousand eight hundred and thirty-four, was seized and possessed of a certain tract or parcel of land, known and designated, as the south half of section eighteen, in

township eighteen, of range six, east, in the Coosa land district, to wit, in the county aforesaid, together with the messuage and appurtenances, thereupon situate and belonging; and being so seized and possessed of said land, he, the said plaintiff, rented, and to farm let, the said land, with the said messuages and appurtenances thereunto belonging, afterwards, viz: within three years from the exhibition of this said complaint, at————in the county aforesaid, to one Thomas Elliott, of said county, for a certain consideration, by the said Elliott, paid to plaintiff. And the plaintiff averred that the said term, for which said Thomas Elliott had rented the said land, and appurtenances, had long since expired, and then was or had been for a long time, viz: for six months anterior to the exhibition of the complaint, fully completed and ended. Yet, that said Thomas Elliott, well knowing the term had been long since, fully completed and ended, and although the possession of the land, and the messuages and appurtenances thereupon situate, and thereto belonging, had been lawfully demanded by plaintiff, to wit, by his agent, lawfully authorised in his behalf; yet the said Thomas Elliott, regardless of said demand, and regardless of his duty in that behalf, unlawfully detained the possession of the said land above described, and the messuage thereupon situate, from the plaintiff, at and in the county aforesaid, on the day and year aforesaid, and still unlawfully detained the same, to the great damage of plaintiff, who prayed process of unlawful detainer to issue, &c.

The sheriff was therefore ordered to summon de-

fendant to appear before the magistrate and an-
swer the charge. On the trial of the case, defen-
dant pleaded not guilty, and also, that he had had
the peaceable and quiet possession of the premises,
in the complainant's complaint, set out, for the
space of three years together, immediately preceed-
ing the complainant's complaint made, and that his
estate therein, was not yet ended.

To the last mentioned plea, there was a demur-
rer, and joinder in demurrer, which, upon argument,
was overruled by the Court.

Issue was joined upon the pleas, and plaintiff
proved, that on the twenty-fifth day of February,
eighteen hundred and thirty-seven, defendant was
notified by plaintiff in writing, that the term for
which defendant had rented the premises in ques-
tion, had long since been fully completed and end-
ed, and that plaintiff demanded the possession,
and hoped the same would be delivered without a
resort to a law suit.

Plaintiff further proved, that after said demand
and notice being given as aforesaid, defendant refus-
ed to give up possession of said land, and still con-
tinued to occupy the same: That on the sixteenth
day of April, eighteen hundred and thirty-four, af-
ter the location of plaintiff on the land, he rented
the premises to the defendant for the term of one
year, to be fully completed, and ended, on the six-
teenth day of April, eighteen hundred and thirty-
five, and that defendant, had paid the rent agreed
upon to the said plaintiff; all which was done under
the superintendence of one of the deputy marshalls
of the United States.

Defendant then offered the following agreement in evidence, viz:

"Agreement entered into, the twenty-sixth day of October, eighteen hundred and thirty-five, between Clarlitko, a Creek Indian, and Thomas Elliott, all of the county of Talladega, and State of Alabama. The said Clarlitko, is entitled to a half section of land, by the treaty, concluded on the twenty-fourth day of March, eighteen hundred and thirty-two, between the United States and the Creek tribe of Indians, which tract of land, is more particularly described, upon the locating agent's books, to which books, reference is hereby made, (and which tract may be also better known, as the half section on which the said Elliott now lives;) the said Clarlitko, hereby agrees to sell and convey said land to the said Thomas Elliott, for and in consideration of the sum of one thousand dollars. And the said Clarlitko, further binds himself, to perfect the titles to the said land, unto the said Elliott, his heirs and assigns, as soon as the President of the United States shall direct the manner in which such conveyance shall be made. If the President shall not direct the manner in which such conveyance shall be made, until the five years from the said treaty, then the said Clarlitko, binds himself to procure a patent, for said land, under said treaty, and forthwith to execute to said Elliott, good and legal titles to said land. The said Clarlitko, further binds himself to keep and maintain the said Elliott, in full possession and enjoyment of said land, until he shall perfect the titles to the same, unto the said Elliott.

"The said Elliott, on his part, binds himself, to pay unto the said Clarlitko, the aforesaid sum of one thousand dollars, as soon as the titles to said land shall be perfected unto him, by said Clarlitko, as is required in this agreement. And the parties bind themselves, each to the other, in the sum of two thousand dollars, to perform their respective agreements, as set forth in this instrument. In testimony whereof, the said parties have hereunto set their hands and seals, the day and year above written. It being understood that this is to take effect, only, in the event, that a pretended contract for said land, entered into by said Clarlitko, with Brasher and M'Elderry, shall be declared void.

Signed, sealed and delivered,

in presence of                                     his

H. H. WYCHE,          ⎞     CLARLITKO,    X  [L. S.]
JAMES LAWSON,         ⎬                    mark
F. L. DAUDSON.        ⎠     THOMAS ELLIOTT, [L. S.]

To the introduction of this instrument in evidence, the plaintiff objected,—his objections were however, overruled by the magistrate, and the agreement read to the jury,—who, after deliberation, returned a verdict of not guilty.

The case was then carried to the Circuit Court of Talladega county, where the judgment of the justice below was affirmed.

The errors assigned in this Court, were:

1. That the Court erred in deciding, that the bond offered in evidence, before the justice of the peace, by the defendant, was competent to go to the jury.

2. The Court erred in not reversing the judgment rendered by the justice of the peace, against the plaintiff.

*Chilton* for plaintiff—*Peck & Clark*, contra.

COLLIER, J.—The plaintiff in error, by his attorney in fact, made complaint in writing, to a justice of the peace, of Talladega county, on the ninth of February last, stating that in eighteen hundred and thirty-four, he was seized and possessed of the south half of section eighteen, in township eighteen, in range six east, in the Coosa land district, lying, being and situate in that county:—and that afterwards, within three years, he rented the same, with its messuages and appurtenances to the defendant, for a consideration which had been paid him, which term had expired for six months previous to the exhibition of his complaint. The complaint then alleges a demand of the possession of the premises, of the defendant, and a refusal to deliver,—charges an *unlawful detainer*, and prays process as the law directs, which was issued and returned.

On the trial before the justice, the defendant pleaded,—

First,—not guilty.

Secondly,—Three years peaceable and quiet possession, immediately preceding complainant's complaint.

And issue being taken, the plaintiff proved, that on the sixteenth day of April, one thousand eight hundred and thirty-four, (after his location,) he rented the premises in dispute, to the defendant,

for one year, and that the same expired on the six-
teenth day of April, eighteen hundred and thirty-
five: that he received the rent agreed upon, which
renting and reception of rent, was under the super-
intendence of a deputy marshal, of the United
States for this State.

The defendant, after having duly proved the
same, offered to read to the jury, a writing under
seal, entered into between the plaintiff and defen-
dant, on the twenty-sixth of October, eighteen hun-
dred and thirty-five, which recites, that the plain-
tiff is entitled to a half section of land, by the trea-
ty of the twenty-fourth of March, eighteen hundred
and thirty-two, between the United States, and
the Creek tribe of Indians, particularly described
in the locating agent's books, (to which reference
is made,) and on which defendant then lived; which
said land, the plaintiff agreed to sell and convey to
the defendant, for one thousand dollars. The plain-
tiff further bound himself, to perfect the title to
the land, unto the defendant, his heirs, &c. as soon
as the President of the United States directed the
manner in which the conveyance should be made.
If the President should not direct the manner in
which the conveyance should be made, before the
expiration of five years from the date of the treaty,
the plaintiff obliged himself to procure a patent un-
der the treaty, and forthwith to execute good and
legal titles. The plaintiff also bound himself, to
keep and maintain the possession and enjoyment of
the defandant in and to the land, until he should
perfect his title to the same.

5 P.    52,

The defendant obliged himself to pay to the plaintiff, the purchase money, so soon as the title undertaken to be made, should be consummated. The parties bind themselves, each to the other, in the sum of two thousand dollars, for the performance of their respective undertakings.

It is lastly agreed, that the contract of the parties, shall only take effect, in the event of a contract previously made between the plaintiff and Brasher & M'Elderry, for the sale of the same land, being declared void.

To the reading of this agreement to the jury, the plaintiff objected, but his objection was overruled, and the correctness of this decision is the only question presented for revision.

The relation of landlord and tenant, being shewn by the plaintiff's testimony, the admission of the subsequent contract, raises the question as to its validity, either as an agreement to sell, or a license to occupy.

By the second article of the treaty of eighteen hundred and thirty two, one section of land is to be allotted to "ninety principal chiefs of the Creek tribe," and to every other head of a Creek family, one half section each. By the third article, it is stipulated, that "these tracts may be conveyed by the persons selecting the same, to any other person, for a fair consideration, in such manner as the President may direct. The contract shall be certified by some person appointed for that purpose, by the President, but shall not be valid, until the President approves the same. A title shall be given by

the United States, on the completion of the payment."

The last recited article of the treaty, imposes checks upon the contracts of the Indian reservees, in regard to their lands, in requiring,—

First—That the President may direct the manner in which they shall be conveyed.

Second—In requiring the contract to be certified by some person, appointed for that purpose by the President; and,

Lastly—In declaring that a contract, "shall not be valid, until the President approves the same."

Waiving the consideration of the question, whether any contract of sale be good, unless the form be prescribed,—we think it indispensable to the validity of every such contract, that it should be certified by the agent provided for, and receive the approval of the President. And this conclusion is attained, not by the application of any rule of construction, but by the express terms of the treaty itself; which declares, that it "shall not be valid, until the President approves the same."

The agreement in question, was not only, not certified and approved, nor ever contemplated a certification or approval; but it provides, expressly, that a conveyance of title, afterwards to be made, shall be perfected. The contract then, never having become valid, as a conveyance, operating *in præsenti*, or as a stipulation for one to be executed *in futuro*,—for the want of these essentials, *it did not unsettle the relation of landlord and tenant*,—but the defendant still continued a tenant at sufferance to the plaintiff.

The undertaking to protect the defendant in the possession and enjoyment of the plaintiff's land, was not a distinct and substantive agreement, but dependent upon the principal contract for the sale and conveyance. And this, as has been shewn, never having acquired validity, all dependent stipulations must be in the same predicament.

This view being decisive of the case, we are relieved from considering the other points discussed at the bar.

The judgment is reversed, and the cause remanded to the Circuit Court, that the proper direction may thence issue, to the justice of the peace who tried the cause, (or his successor,) requiring the issuance of a *venire facias, de novo*.

HOPKINS, C. J. not sitting.